UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARTY CALDERON, | : |
| Plaintiff, | : |
| | : |
| v. | : Civil No. 3:05cv1341 (JBA) |
| | : |
| DINAN & DINAN PC and | : |
| ALTHEA S. DINAN, | : |
| Defendants. | : |

### Ruling on Motion to Dismiss [Doc. # 22]

Plaintiff pro se Marty Calderon ("Calderon"), a former legal secretary employed by defendants, Dinan & Dinan PC and its principal attorney, Althea S. Dinan ("Dinan"), brings a complaint alleging numerous constitutional, statutory and common law violations in connection with her termination on April 7, 2005. See Amended Complaint [Doc. # 47]. Defendants move to dismiss her complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. For the reasons that follow, defendants' motion will be granted in part and denied in part.

## I.   Factual Background

The April 17, 2006 amended complaint alleges the following facts. Plaintiff is an Hispanic female who was hired by defendants in early November 2004.[1]  Am. Compl. ¶¶ 2, 4. She earned $10/hour and was paid every Thursday by handwritten check,

---

[1]Plaintiff's complaint actually gives the date as November 2005, which is in error because according to the complaint and CHRO charge, she was terminated in April 2005.

which she alleges "did not state the Plaintiff's year to date earnings or deductions." Id. ¶ 6.  When she was hired, there were two Caucasian female support staff working at the law firm, including a "filing person," who earned $8/hour, and a receptionist/billing person who earned $12/hour.  Id. ¶¶ 10-18. Both of these employees left shortly after plaintiff arrived, and plaintiff was required to "take on all their responsibilities without extra compensation...." Id. ¶ 19.  Plaintiff graduated from Quinnipiac Law School in December 2004, and alleges that she was promised a raise "when she passed the Connecticut Bar Examination and was admitted to practice law." Id. ¶¶ 8, 20.

Plaintiff alleges she "had reason to believe that Attorney Althea S. Dinan was engaging in unethical client billing and bookkeeping practices," id. ¶ 20, including not depositing cash receipts from clients, and therefore plaintiff "refused to make bank deposits for her," id. ¶ 25.  Plaintiff also refused "to do client billing in that the Plaintiff was not hired to do such work, had never done law client billing in Quick Books and did not feel it was appropriate to make bank deposits in Dinan & Dinan PC's bank account which was not the Plaintiff's bank account." Id. ¶ 25.  She alleges she refused to do these tasks because "she did not want to assist the Defendants in hiding cash income from the U.S. Government...." Id. ¶ 28.

Plaintiff alleges that Dinan "would refer to the Plaintiff

as 'cockroach,' which was a racially motivated remark, 'a horse's ass['] and let her male clients treat the Plaintiff inappropriately....'  Id. ¶ 29.  She further alleges that Dinan "had extremely poor office etiquette and would frequently yell and swear at the Plaintiff, and refer to the Plaintiff as a 'Bitch'...."  Id. ¶ 31.  Plaintiff attributes this behavior to Dinan's belief "that she could treat the Plaintiff and yell at the Plaintiff any way she wanted because the Plaintiff was Hispanic, had just graduated from law school, and that the Plaintiff had one conviction for a family matter on the Plaintiff's record...."  Id. ¶ 32.

On April 7, 2005, plaintiff was asked to make a bank deposit and she refused.  Dinan then gave plaintiff her paycheck and she went to the People's Bank across the street, which was the firm's bank, to cash her check.  Id. ¶ 45.  The bank manager told plaintiff that they could no longer cash her paycheck with only a Connecticut driver's license and in the future they would require a second form of identification.  They did, however, cash her April 7 paycheck.  Plaintiff alleges that between November 2004 and April 2005 People's Bank had cashed her paycheck each Thursday with a driver's license and verbal authorization from the law firm.  Id. ¶ 47.  She alleges that in April 2005 People's Bank conspired with Dinan to refuse to cash future payroll checks "in retaliation for the Plaintiff refusing to make bank deposits

from the Defendants and for complaining to the Defendants about
not receiving proper wage statements from the Defendants...."
Id. ¶ 46, 48.

After her discussion with the bank manager, plaintiff
returned to the office and sat down and typed the following
letter:

> Dear Attorney Althea S. Dinan,
>
> Please be advised that I went to your bank, People's
> Bank across the street from your office and the manager
> told me today she can no longer cash my checks there with
> only a Connecticut State Driver's License.
>
> Please be advised that according to the State of
> Connecticut, I should receive a good, cashable check for
> payroll for the hours I work every week.
>
> If your bank, the bank my payroll check is drawn on
> will not cash the check, then you have not paid with
> funds that I can use.
>
> I will need another form of payment, and your bank
> manager told me to ask you cash [sic] for payroll since
> they cannot cash my payroll check with only a Connecticut
> State Driver's license.

Am. Compl. Ex. 10 [Doc. # 47-3].

Calderon handed the letter to Dinan while Dinan was meeting
with a client.  Dinan "became very angry at the Plaintiff, raised
her voice very high and called the Plaintiff a 'Bitch' and told
the Plaintiff to get out of there...."  Id. ¶ 51.  Plaintiff was
terminated.

Reading the amended complaint and briefing liberally in
plaintiff's favor, she brings claims for race discrimination in

violation of Title VII of the Civil Rights Act of 1964,[2] the Connecticut Fair Employment Practices Act (Conn. Gen. Stat. § 46a-60 et seq.), and 42 U.S.C. § 1981 and 1985 based on the fact that she was paid less than one Caucasian employee at Dinan & Dinan and was terminated allegedly due to her race; violation of her right to free speech under the First Amendment, the Connecticut Constitution, and Conn. Gen. Stat. § 31-51q; whistleblower liability under Conn. Gen. Stat. § 31-51m; improper payment of wages under Conn. Gen. Stat. § 31-13, § 31-40o, § 31-71 - 72; violation of the Connecticut Unfair Trade Practices Act (Conn. Gen. Stat. § 42-110a et seq.); common law wrongful discharge; slander and libel; intentional infliction of emotional distress; and interference with contractual expectations.

## II.  Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  To survive the motion, the plaintiff must set forth "'a short and plain statement of the claim' that will give the defendant fair

---

[2]The complaint in various places lists both Title II and Title VI, but the Court construes the complaint as asserting a claim under Title VII, which would be appropriate to the employment context of this case.  See Am. Compl. ¶ 1.

notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957), quoting Fed. R. Civ. P. 8(a)(2), see also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46 (footnote omitted); see also Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

## III. DISCUSSION

### A.   Title VII

Plaintiff's complaint alleges unlawful employment discrimination on the basis of race under the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. It is a well known prerequisite to filing a Title VII case that the plaintiff must exhaust her administrative remedies by filing a complaint with the EEOC. See 42 U.S.C. § 2000e-5; Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998). Calderon never filed a complaint with the EEOC, and therefore she has not met the administrative

prerequisite to filing a Title VII claim.  Additionally, according to the complaint Dinan & Dinan had three employees at most and therefore would not be an employer covered by Title VII, which applies only to employers of fifteen or more employees. See 42 U.S.C. § 2000e(b).  Plaintiff's Title VII claim therefore must be dismissed.

**B.   CFEPA**

Plaintiff also claims that the alleged racially discriminatory treatment by Althea Dinan violated the Connecticut Fair Employment Practices Act, and she brought such an administrative charge before the Connecticut Commission on Human Rights and Opportunities ("CHRO") in April 2005, shortly after she was fired.  Pursuant to Conn. Gen. Stat. § 46a-101(e), and the right-to-sue letter appended as an exhibit to plaintiff's Amended Complaint, a complainant must bring suit within 90 days after the release of jurisdiction by the CHRO.

The CHRO released jurisdiction over Calderon's CFEPA claim on September 30, 2005.  The CFEPA claim was not in Calderon's original federal court complaint in August 2005, but was added in her February 28, 2006 supplemental complaint [Doc. # 36]. According to the certified mail receipt appended by plaintiff to the February 28 complaint, the CHRO's release letter was received at plaintiff's address in Norwalk, Connecticut on October 4, 2005.  Plaintiff suggests that she did not receive the letter

until February 26, 2006, and she has provided a CHRO envelope postmarked February 24, 2006.  Nothing on the envelope indicates it contents, and the certified mail number provided on plaintiff's CHRO release letter indicates that the letter was first received at plaintiff's address in October 2005.  Therefore her addition of the CFEPA claim to her supplemental complaint is untimely as beyond the 90-day deadline.  Plaintiff offers no reason why the 90-day statute of limitation should be tolled.  Accordingly, her claim under the CFEPA must be dismissed.

### C.   42 U.S.C. § 1981

To make out a claim under 42 U.S.C. § 1981, plaintiff must allege the following elements: (1) she is a member of a racial minority; (2) defendants intended to discriminate against her on the basis of race; and (3) the discrimination concerned one of the statute's enumerated activities, including "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981; Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000).  To prevail on a § 1981 claim the plaintiff must prove that defendants committed "intentional racial discrimination," Brown, 221 F.3d at 339, meaning "discrimination ... because of the individual's race." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993).

An employee at will may maintain a cause of action under §
1981 for racially discriminatory termination.  Lauture v. Int'l
Bus. Mach. Corp., 216 F.3d 258, 259 (2d Cir. 2000).  Further, in
the Civil Rights Act of 1991, Congress responded to Patterson v.
McLean Credit Union, 491 U.S. 164 (1989), and amended § 1981 to
define the term "make and enforce contracts" to include "the
making, performance, modification and termination of contracts,
and the enjoyment of all benefits, privileges, terms, and
conditions of the contractual relationship."  42 U.S.C. § 1981(b)
(emphasis supplied).

Defendants argue that plaintiff's allegations of racial
discrimination are "conclusory" and therefore insufficient to
state a claim upon which relief may be granted.  The Supreme
Court has rejected this argument, reversing the Second Circuit's
previously-established heightened pleading standard in employment
discrimination cases:

> Respondent argues that allowing [Title VII] lawsuits
> based on conclusory allegations of discrimination to go
> forward will burden the courts and encourage
> disgruntled employees to bring unsubstantiated suits.
> Whatever the practical merits of this argument, the
> Federal Rules do not contain a heightened pleading
> standard for employment discrimination suits....  Rule
> 8(a) establishes a [notice] pleading standard without
> regard to whether a claim will succeed on the merits.

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514-15 (2002).

Here, plaintiff alleges that she was paid less than one
Caucasian employee at Dinan & Dinan, due in part to her race;

that Althea Dinan called her a "cockroach," which is alleged to
be a racial epithet; that Dinan insulted her and otherwise
treated her poorly because of her race; and that she was
ultimately terminated because of her race.  Although the
complaint contains very few factual allegations which, if proved,
would permit an inference that plaintiff was terminated or
discriminated against in the terms and conditions of her
employment because of her race, that "it may appear on the face
of the pleadings that a recovery is very remote and unlikely...
is not the test." Swierkiewicz, 534 U.S. at 515 (quoting
Scheuer, 416 U.S. at 236).  Plaintiff's allegations of racially-
motivated wage discrimination and termination are sufficient to
state a claim on which relief may be granted under § 1981.

Defendants' motion to dismiss the § 1981 claim is therefore
denied.

### D.    42 U.S.C. § 1985(3)

The four elements of a § 1985(3) claim are: (1) a
conspiracy; (2) for the purpose of depriving, either
directly or indirectly, any person or class of persons
of equal protection of the laws, or of equal privileges
and immunities under the laws; (3) an act in
furtherance of the conspiracy; (4) whereby a person is
either injured in his person or property or deprived of
any right of a citizen of the United States.
Furthermore, the conspiracy must also be motivated by
"some racial or perhaps otherwise class-based,
invidious discriminatory animus behind the
conspirators' action."

Mian, 7 F.3d at 1087-88 (quoting United Bhd. of Carpenters, Local
610 v. Scott, 463 U.S. 825, 829 (1983)).

10

Calderon alleges that Dinan and People's Bank conspired to deprive her of her right to cash her paycheck due to her complaints about having to make bank deposits and "for complaining to the Defendants about not receiving proper wage statements...." Am. Compl. ¶ 46.  Plaintiff does not allege that this conspiracy was related to her race.  Therefore she has failed to allege facts sufficient to state a § 1985(3) claim.

**E.   First Amendment**

Plaintiff alleges that defendants terminated and otherwise retaliated against her for exercising her First Amendment-protected right to freedom of speech.  "It is elementary constitutional doctrine that the first amendment only restrains action undertaken by the Government." <u>Buckley v. Am. Fed. of Television and Radio Artists</u>, 496 F.2d 305, 309 (2d Cir. 1974).  Plaintiff names no government actors in her complaint and therefore her First Amendment claims must be dismissed.

**F.   Conn. Gen. Stat. § 31-51q**

Connecticut law, however, extends the protection of the First Amendment to employees of private employers.  <u>See</u> Conn. Gen. Stat. § 31-51q; <u>Cotto v. United Techs. Corp.</u>, 251 Conn. 1, 16, 738 A.2d 623, 632 (Conn. 1999).  To state a claim under § 31-51q, "a plaintiff must allege that (1) [s]he was exercising rights protected by the first amendment to the United States Constitution (or an equivalent provision of the Connecticut

11

Constitution); (2) [s]he was fired on account of [her] exercise
of such rights; and (3) [her] exercise of [her] first amendment
rights did not substantially or materially interfere with [her]
bona fide job performance or with [her] working relationship with
[her] employer." <u>Campbell v. Windham Community Mem. Hospital,
Inc.</u>, 389 F. Supp. 2d 370, 381 (D. Conn. 2005) (quoting <u>Lowe v.
AmeriGas, Inc.</u>, 52 F. Supp. 2d 349, 359 (D. Conn. 1999)).

> Section 31-51q ... is not limited to freedom of speech
> in the public arena.  Nevertheless, the statute does
> not protect all speech. The statute applies only to
> expressions regarding public concerns that are
> motivated by an employee's desire to speak out as a
> citizen.  The court must consider, therefore, whether
> [the plaintiff] spoke as a citizen upon matters of
> public concern or instead as an employee upon matters
> only of personal interest.  The Connecticut Supreme
> Court has concluded that it is within the province of
> the trial court to determine, as a matter of law, which
> topics are considered to be of public concern.  The
> resolution of whether an employee's statements address
> such a topic is, however, within the province of the
> jury, to be determined by looking to the content, form
> and context of the particular statements in question.

<u>Id.</u> at 381-82 (internal citations, quotation marks omitted).

Calderon alleges that she was fired for complaining to
Althea Dinan about her allegedly improperly-written paychecks and
complaining about having to make bank deposits for the firm,
which she refused to do on the grounds that she suspected the
firm was hiding some of its cash income from the IRS.  The fact
that Calderon "expressed her concerns privately rather than
publicly does not cause her to relinquish [the] protection of
[the] First Amendment...." <u>Thibeault v. Scap Motors, Inc.</u>, No.

12

Civ. 304CV1936 (JCH), 2005 WL 2041968, at *2 (D. Conn. Aug. 23, 2005) (citing <u>Givhan v. Western Line Consol. Sch. Dist.</u>, 439 U.S. 410, 414 (1979)).  Further, if the firm were violating state wage and hour laws pertaining to the accounting of paychecks, <u>see infra</u>, § III.H, or hiding cash income in violation of the tax laws, these are issues of public concern.  They go beyond merely plaintiff's own "terms of her employment or her own pay and salary," <u>Campbell</u>, 389 F. Supp. 2d at 382, and are directed to issues in which the public and state and federal governments would take an interest.

Whether plaintiff's motivation in making these complaints was to act as a citizen-whistleblower, or some other motivation, is an issue of fact properly left for a more fully developed record.  Whether plaintiff was fired <u>because</u> she discussed these topics with Althea Dinan, as she alleges, or because she handed an accusatory letter to Dinan and created a scene during a client meeting, as defendants allege, also is a factual dispute that must await disposition at a later stage.  Likewise, whether plaintiff's complaint about her paychecks and refusal to make deposits substantially or materially interfered with her bona fide job performance is an issue of fact that must await further development.  At this stage, plaintiff's pleadings are minimally sufficient to survive a motion to dismiss.

**G.   Conn. Gen. Stat. § 31-51m**

Connecticut's whistleblower protection statute protects from termination or discipline any employee who reports a "violation or a suspected violation of any state or federal law or regulation or any municipal ordinance or regulation <u>to a public body</u>...." Conn. Gen. Stat. § 31-51m(b).  "Public body" is defined as a federal, state or municipal agency or employee or officer thereof.  <u>Id.</u> § 31-51m(a)(4); § 1-200.

Plaintiff's complaint does not allege that before her termination she reported her suspicions about wrongdoing at Dinan & Dinan to any public agency.  She alleges that the law firm's conduct may have violated federal tax laws or state wage payment laws, for instance, but she does not allege that she voiced her concerns to the IRS, the State Department of Labor, or any other public agency.  Therefore her conduct does not fall within the realm of protected actions under § 31-51m, and her claim under this statute will be dismissed.

**H.   Wage and Hour Statutes**

Calderon brings claims under a series of Connecticut labor statutes governing working hours and payment of wages.  Plaintiff invokes Conn. Gen. Stat. § 31-40o, which prohibits discrimination or retaliation against employees who complain of various occupational safety or health violations or hazards.  This statute does not relate to the factual allegations in the

14

complaint.  Likewise, § 31-69b(a) relates to service on a wage
board and the issue of collective bargaining, which is not
relevant to plaintiff's complaint.

Conn. Gen. Stat. § 31-13a requires that "[w]ith each wage
payment each employer shall furnish to each employee in writing a
record of hours worked, the gross earnings showing straight time
and overtime as separate entries, itemized deductions and net
earnings...."  Plaintiff alleges Dinan & Dinan violated this
provision by neglecting to give her "proper records of her weekly
earnings including gross deductions and gross wages..."  Pl. Mem.
in Opp. at 21.  Enforcement of this statute is committed to the
Department of Labor, however; it does not appear that an
individual right of action exists for enforcement.  See Conn.
Gen. Stat. § 13-22 (enforcement by DOL); § 13-71q (providing for
criminal penalties, including fines and jail time, but not civil
remedies).  Therefore plaintiff fails to state a claim on which
relief may be granted under this statute.[3]

Section 31-71b requires that "[e]ach employer... shall pay
weekly all moneys due each employee on a regular pay day,

---

[3]Plaintiff has attached as Exhibit 1 to her February 23,
2006 complaint a copy of plaintiff's April 7, 2005 paycheck for
$325.53, which is a handwritten check indicating in the memo
line: "SS 21.86, medic 5.11, gross 352.50, no fed tax no Ct tax."
This shows that Dinan & Dinan did in fact list plaintiff's gross
wages, Social Security, Medicare and tax withholdings on at least
one paycheck, and plaintiff's complaint does not allege any other
particular paycheck which failed to contain the same information.

designated in advance by the employer, in cash, by negotiable checks or, upon an employee's written request, by credit to such employee's account in any bank...." Section 31-72 provides penalties, including interest, for violation of the previous section.  Plaintiff argues that Dinan & Dinan violated these provisions because People's Bank told her that in the future they would need a second form of identification in order to cash her check, because she did not have a People's Bank account. However, plaintiff states in her complaint that People's Bank had regularly cashed her paychecks from Dinan & Dinan between November 2004 and April 2005, and they cashed the April 7 check as well.  Nothing in her factual allegations indicates that Dinan & Dinan failed to tender negotiable paychecks.  People's Bank's check cashing policy may have made cashing plaintiff's paycheck more difficult, but that does not render the firm's checks non-negotiable.  Plaintiff's options were to open a People's Bank account, deposit the checks in her own bank account, or request direct payroll deposit to her account.  Nothing in § 31-71b requires an employer to pay in cash, as plaintiff demanded in her letter to Althea Dinan.

Conn. Gen. Stat. 31-71c(b) provides, "Whenever an employer discharges an employee, the employer shall pay the employee's wages in full not later than the business day next succeeding the date of such discharge."  Plaintiff alleges that Dinan & Dinan

violated this provision, and she sought redress with the Department of Labor ("DOL").  She subsequently was paid her last day's wages about two weeks after her termination.  Am. Compl. ¶ 71.  Thus, while defendants' payment was untimely, it was made, and this issue is now moot.

Accordingly, plaintiff's claims under the state wage and hour statutes are dismissed.

### I.   **CUTPA**

Plaintiff does not brief her claim under CUTPA, Conn. Gen. Stat. § 42-110b(a), but it appears from the complaint that this claim stems from her allegation that Dinan & Dinan was over-billing or mis-billing its clients or not depositing clients' cash consultation fees into its law firm account.  Other than plaintiff's statement that her refusal to make bank deposits stemmed from these allegedly unfair or unethical practices, plaintiff does not allege that she was injured by such practices, and makes no showing that she has standing to raise the rights of Dinan & Dinan clients who are not parties to this lawsuit.  Not finding any other factual allegation in the complaint that could support a CUTPA claim, this claim will be dismissed.

### J.   **Wrongful discharge**

Connecticut has long followed the rule that employment is at-will and terminable by either the employee or the employer without reason.  <u>Storm v. ITW Insert Molded Prods.</u>, 400 F. Supp.

2d 443, 446 (D. Conn. 2005); <u>Fisher v. Jackson</u>, 142 Conn. 734,
736, 118 A.2d 316 (Conn. 1955).  Connecticut common law provides
an exception to this general rule for wrongful discharge "if [a]
former employee can prove a demonstrably improper reason for
dismissal, a reason whose impropriety is derived from some
important violation of public policy."  <u>Sheets v. Teddy's Frosted
Foods, Inc.</u>, 179 Conn. 471, 474-75, 427 A.2d 385 (Conn. 1980).

　　　"The cases which have established a tort or contract remedy
for employees discharged for reasons violative of public policy
have relied upon the fact that in the context of their case the
employee was otherwise without a remedy and that permitting the
discharge to go unaddressed would leave a valuable social policy
to go unvindicated."  <u>Burnham v. Karl & Gelb, P.C.</u>, 252 Conn.
153, 159-60, 745 A.2d 178 (Conn. 2000) (citing <u>Atkins v.
Bridgeport Hydraulic Co.</u>, 5 Conn. App. 643, 648, 501 A.2d 1223
(1985)).  In articulating a public policy exception, the
Connecticut Supreme Court "'intended merely to provide a 'modicum
of judicial protection' for those who did not already have a
means of challenging their dismissals under state law.'"  <u>Medvey
v. Oxford Health Plans</u>, 313 F. Supp. 2d 94, 99 (D. Conn. 2004)
(citing <u>Banerjee v. Roberts</u>, 641 F. Supp. 1093, 1108 (D. Conn.
1986) and <u>Sheets</u>, 179 Conn. at 477, 427 A.2d 385).  However,
given the rule of at-will employment, this exception is not
intended to subsume all unfair dismissals, only those which have

the purpose or effect of subverting some unprotected public policy, otherwise the at-will doctrine would become meaningless.

Thus, "the existence of statutory remedies for plaintiff's allegedly wrongful discharge in violation of the public policies embodied in state and federal race discrimination statutes precludes plaintiff's claim for public policy wrongful discharge...." Storm, 400 F. Supp. 2d at 447. Here, plaintiff brought a § 1981 race discrimination claim, and could have had a remedy pursuant to the CFEPA if she had timely filed such a claim. Because other statutory remedies are available, she may not maintain a common law claim for wrongful discharge.

### K.    Slander and Libel

> A defamatory statement is defined as a communication that tends to harm the reputation of another as to lower [her] in the estimation of the community or to deter third persons from associating or dealing with [her].... To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement....

> Defamation is comprised of the torts of libel and slander.... Slander is oral defamation.... Libel... is written defamation....

Gagnon v. Housatonic Valley Tourism Dist. Comm'n, 92 Conn. App. 835, 847-48, 888 A.2d 104, 114 (Conn. App. Ct. 2006) (quoting Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217, 837 A.2d 759 (Conn. 2004); Gambardella v. Apple Health Care, Inc., 86

Conn. App. 842, 850, 863 A.2d 735 (Conn. 2005)).

Plaintiff claims she was defamed because she was "compelled" to republish the fact of her termination to prospective employers, and because Althea Dinan has refused to give her a reference for future jobs.  The Connecticut Supreme Court recently refused to recognize "compelled self-publication" defamation as a cause of action in the employment context. Cweklinsky, 267 Conn. at 216, 229, 837 A.2d at 763, 770 ("declin[ing] to recognize the doctrine of compelled self-publication defamation" where employee alleged he was defamed because he had to tell prospective employers "over and over" why he had been terminated from previous job).  Thus Calderon's claim that she is defamed each time she must answer a prospective employer's question about why she left Dinan & Dinan is not actionable and must be dismissed.  Additionally, Calderon's claim that she was defamed by Althea Dinan's refusal to give her a job reference is not actionable because the tort of defamation requires the defendant to affirmatively "publish a defamatory statement," id. at 217; plaintiff cites, and the Court finds, no Connecticut cases holding that refusal to make a statement is actionable defamation.

Plaintiff also alleges she was defamed when Althea Dinan asserted during a workers' compensation hearing that plaintiff was terminated for willful misconduct.  "At common law,

communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy....  The effect of an absolute privilege in a defamation action ... is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Chadha v. Charlotte Hungerford Hosp., 272 Conn. 776, 788, 865 A.2d 1163, 1171-72 (Conn. 2005).  Calderon's workers' compensation hearing, though not before a court, was quasi-judicial in nature, and therefore any witness statements made during that hearing are privileged. Id. (holding that affidavits made to medical licensing board were quasi-judicial and therefore not actionable in defamation case).  For these reasons, plaintiff's defamation claim must be dismissed.

**L.   Intentional Infliction of Emotional Distress**

To support a claim for intentional infliction of emotional distress ("IIED") under Connecticut law, a plaintiff must show that (1) the defendant intended to cause emotional harm, or knew or should have known that such harm was likely to result; (2) the defendant's misconduct was "extreme and outrageous"; (3) such conduct caused the plaintiff's harm; and (4) the plaintiff sustained "severe" emotional harm. Honeck v. Nicolock Paving Stones of New England, LLC, No. Civ.3:04CV1577 (JBA), 2005 WL 1388736, at *3 (D. Conn. June 10, 2005); Petyan v. Ellis, 200

Conn. 243, 253, 510 A.2d 1337, 1342 (1986).  Initially, whether the defendant's conduct is sufficiently extreme and outrageous is an issue for the court to decide.  Appleton v. Bd. of Educ., 254 Conn. 205, 210, 757 A.2d 1059, 1062 (2000).  "Only where reasonable minds disagree does it become an issue for the jury." Id.

To defeat a motion to dismiss, a plaintiff must show that he will be able to establish conduct which "exceed[ed] all bounds usually tolerated by decent society."  Petyan, 200 Conn. at 254, 510 A.2d at 1062, n. 5 (quoting W. Prosser & W. Keeton, Torts § 12, at 60 (5th ed. 1984)).  According to Appleton, conduct is sufficiently objectionable when a "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  254 Conn. at 211, 757 A.2d at 1062 (quoting Restatement (Second) Torts § 46, cmt. d (1965)).  "Mere insults, indignities, or annoyances that are not extreme or outrageous will not suffice." Brown v. Ellis, 40 Conn. Supp. 165, 167, 484 A.2d 944, 946 (Conn. Sup. Ct. 1984).

Connecticut courts have repeatedly held that even insulting, hurtful, and socially undesirable conduct, without more, is not enough to support a claim of IIED.  See e.g. Miner v. Town of Chesire, 126 F. Supp. 2d 184, 195 (D. Conn. 2000); Newton v. Shell Oil Co, 52 F. Supp. 2d 366, 375 (D. Conn. 1999); Honeck,

2005 WL 1388736, at *4; <u>Appleton</u>, 254 Conn. at 211, 757 A.2d at
1063.  In some cases, allegations that the defendant knowingly
exploited a particular susceptibility of the plaintiff have
survived dismissal.  <u>See</u> <u>Mellaly v. Eastman Kodak Co.</u> 42 Conn.
Supp. 17, 21, 597 A.2d 846, 848 (Conn. Super. Ct. 1991); <u>Brown v.</u>
<u>Ellis</u>, 40 Conn. Supp. 165, 166, 484 A.2d 944, 945 (Conn. Super.
Ct. 1984).

The specific conduct here is that Althea Dinan, on one or
more occasions, called her a "bitch," and a "cockroach," which is
alleged to be a racial epithet.  However, plaintiff does not
allege any particular susceptibility or disability exploited by
defendants.  As Calderon states in her amended complaint, the
essence of her claim is that Althea Dinan "had extremely poor
office etiquette...."  Am. Compl. ¶ 31.  According to plaintiff's
allegations, she and Dinan had frequent disputes over the scope
of plaintiff's job responsibilities, and Dinan directed profanity
and insults at plaintiff at times.  While these allegations, if
proven, would indeed show poor office etiquette, they are not
sufficiently extreme and outrageous, as a matter of law, to
support an IIED claim.

**M.   Interference With Contractual Expectations**

"A claim for tortious interference with contractual
relations requires the plaintiff to establish (1) the existence
of a contractual or beneficial relationship, (2) the defendants'

23

knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." Collum v. Chapin, 40 Conn. App. 449, 452, 671 A.2d 1329, 1332 (Conn. App. Ct. 1996) (citations omitted).

Calderon alleges that Althea Dinan has interfered with her ability to get another job because Dinan "has slandered and libeled the Plaintiff to third parties that call the defendants for job references regarding the Plaintiff..." Am. Compl. ¶ 85. Plaintiff nowhere alleges that she obtained an employment contract or at-will position with which defendants interfered. Rather, her allegation is that defendants prevented her from obtaining job interviews or offers. To establish a claim for interference with contract, plaintiff must first establish that she actually had a "contractual or beneficial relationship" with another employer, which she has not pled in her amended complaint. Because she cannot make out the first element of this claim, this claim must be dismissed.

**IV.   CONCLUSION**

    Accordingly, defendants' motion to dismiss is DENIED IN PART as to the claims under 42 U.S.C. § 1981 and Conn. Gen. Stat. § 31-51q, and GRANTED IN PART as to the remaining claims in the Amended Complaint.

                              IT IS SO ORDERED.


                              /s/
                              _____
                              JANET BOND ARTERTON
                              United States District Judge

**Dated at New Haven, Connecticut, this 13th day of June, 2006.**